W. B. ADDINGTON *et al.*, Respondents, v. JOHN CULLINANE *et al.*, Appellants.

St. Louis Court of Appeals, December 20, 1887.

1. TRADEMARK—INFRINGEMENT—MEASURE OF DAMAGES.—In an action at law for damages for the infringement of a trademark the measure of damages is the plaintiff's loss, and not the defendant's gain, caused by the infringement.

2. ———— In such an action, in the absence of proof of actual loss as a result of the infringement, only nominal damages can be recovered.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Reversed nisi.*

A. R. TAYLOR and M. McKEAG, for the appellants : In an action at law for a violation of trademark, special damages by loss of custom or otherwise must be proved ; and it can not be assumed that the goods sold by the defendant would have been sold by the plaintiff but for the defendant's unlawful use of his trademark. Brown on Trademark [2 Ed.] sec. 505 ; *Leather Cloth Co. v. Hirschfield*, L. R. 1 Eq. 229 ; *Seymour v. McCormick*, 16 How. [U. S.] 480 ; *Peltz v. Eichele*, 62 Mo. 171 ; 3 Sutherland on Damages, 631, 632, and note 1 ; *Dobson v. Carpet Co.*, 114 U. S. 439. There being no such proof, nominal damages only were recoverable. *Morrison v. Yancey*, 23 Mo. App. 670 ; *Brown v. Road Co.*, 89 Mo.

152 ; *Engle v. Jones*, 51 Mo. 316 ; *Franz v. Hilterbrand*, 45 Mo. 121 ; *Whalen v. Centenary Church*, 62 Mo. 327.

KERR & KERR, for the respondents : Any device, name, contrivance, symbol, or other thing adopted to designate, make known, and distinguish the source and origin of goods may become a trademark. *Marsh v. Billings*, 7 Cush. 322 ; *Fisley v. Fassett*, 44 Mo. 168 ; *Howard v. Henrequirs*, 3 Sand. 726 ; *Burnett v. Phalon*, 9 Bosw. 192 ; 5 Abbt. Prac. [N. S.] 212 ; *Newman v. Alvord*, 49 Barb. 599 ; *Knott v. Morgan*, 2 Keene, 220 ; *Gillett v. Esterbrook*, 47 Barb. 471 ; 22 Law Rep. 428–6 ; R. I. 437 ; 7 Beav. 80 ; *Williams v. Adams*, Myer's Fed. Decisions, sect. 474 ; *Saunders v. Utt*, 16 Mo. App. 322, and cases cited ; Brown on Trademark, sec. 273, p. 187, and cases cited ; 50 Barb. 236. Imitation of a trademark need not be exact or perfect, nor is it necessary that the whole should be pirated, nor is it necessary that any one should be deceived thereby, nor is it necessary to prove intentional fraud. *Filley v. Fossett*, 44 Mo. 168 ; *United States v. Roche*, 1 McC. 385 ; *Tobacco Co. v. Hynes*, 20 Fed. Rep. 883 ; 4 Cliff. 461. Anything which amounts to a false representation by others in reference thereto, by which the public may be led to believe that the goods are those of the plaintiff, and which works a fraud on the plaintiff, makes the basis of the action, and he is entitled to damages. *Conrad v. Brewing Co.*, 8 Mo. App. 277 ; *Saunders v. Gross*, 20 Mo. App. 96 ; *Saunders v. Utt*, 16 Mo. App. 322. " As to damages, the facts present a case of fraud on the plaintiffs and a violation of their rights ; and without proof of special damages, the jury having found for the plaintiffs, they were entitled to such damages as the jury, on the whole evidence, shall be satisfied they have sustained, and the damage is not confined to the loss of such actual sales as could be specifically shown, but the jury might make such inferences, as to the loss and injury sustained by the plaintiffs, as they might think warranted by the whole evidence in the case." *Conrad*

*v. Brewing Co.*, 8 Mo. App. 277; *Marsh v. Billings*, 7 Cush. 322; *Peltz v. Eichele*, 62 Mo. 171. Exemplary damages are such as would be a good, sound compensation and an adequate recompense for the injury sustained, and such as might serve for a wholesome example for others in like cases. *Friedenheit v. Edmundson*, 36 Mo. 226.

LEWIS, P. J., delivered the opinion of the court.

The petition states, in effect, that, ever since a date in the year 1884, the plaintiffs have been, and now are, partners doing business under the firm name and style of the Phos-Ferrone Company, and engaged in the manufacture and sale of an iron tonic drink under the name of Phos-Ferrone; that the term Phos-Ferrone is an arbitrary term, not before that time used in said business, and that it was adopted by the plaintiffs as their trademark, to designate and distinguish the origin and ownership of the said iron tonic manufactured and sold by them; that, on or about the date above mentioned, the plaintiffs, in due form of law, caused their said trademark to be filed and recorded in the recorder's office of the city of St. Louis, complying in all respects with the requirements of the statute, which are specifically set out; that, up to the present time, the plaintiffs have continually manufactured and sold the said iron tonic, and have always marked and distinguished the same by labels attached, bearing the word, "Phos-Ferrone," or by having the same word blown into the glass of the bottles or vessels containing the said iron tonic; that the plaintiffs gained and acquired great fame and reputation on account of the excellent quality of the said iron tonic so prepared and sold by them, and also great gains and profits from their said sales in the city of St. Louis. Yet the defendants, well knowing the premises, wickedly and wrongfully intending to injure the plaintiffs, and to deprive them of their said gains and profits, did prepare and sell about four hundred thousand bottles of an alleged tonic drink under the

name of "Sas-Ferrone," thus using a part of the plaintiffs' said trademark, and thereby preventing the plaintiffs from selling about four hundred thousand bottles of their said "Phos-Ferrone," which they would have sold, but for the said wrongful acts of the defendants; whereby the plaintiffs have been damaged in the sum of five thousand dollars, for which they ask judgment. The answer was a general denial. There was a jury trial and a verdict in favor of the plaintiffs for three hundred and fifty dollars.

So far as the cause of action alone is concerned, the instructions given put the case to the jury very fairly, and there was no lacking of evidence in support of the verdict. But, in relation to the measure of damages, error was committed which necessitates a reversal of the judgment.

The court gave for the plaintiffs the following instruction:

"If they (the jury) find for the plaintiffs, the measure of damages of the plaintiffs is the actual net profits made by the defendants on the goods sold by them prior to September 3, 1886, unless the jury further believe, from the evidence, that the act or acts of the defendants were wilful and malicious; then the jury may find exemplary damages in addition to the above."

If the plaintiffs had demanded an accounting of the profits made by the defendants, on the equitable ground that those profits were made by the use of the plaintiffs' property, the instruction might have been substantially applicable. But in a common-law action for damages, in cases of this class, such a method of arriving at the plaintiffs' rights has never been sanctioned. In 3 Sutherland on Damages, pp. 630, 631, the law is explained, with numerous citations of authorities, thus: "The compensation to the owner of a trademark, for the injury he suffers from a wrongful and unauthorized use of it by another, is ascertained and computed on substantially the same principles as damages for infringe-

ments of patents and copyrights. * * * The net profits may be recovered in equity as profits made by the use of the plaintiff's property, and the defendant, as constructive trustee, compelled to account for them. But at law only damages can be recovered, and they will be measured by the plaintiff's loss and not by the defendant's gain; the profits are there held not to be the measure of damages, nor an element of them, where there is any other method of ascertaining and measuring them. * * * Nor will the proof of the defendant's profits warrant a legal presumption that the plaintiff's loss is a corresponding amount." Another elementary writer says, in the same connection: "But the damages must be proved from the evidence. A mere *possible* injury furnishes no ground of damages. * * * The patentee may sue at law for the damages which he has sustained, and those damages he is entitled to recover, whether the defendant has made any profits or not. In trade-mark cases, the rule is much the same." Browne on Trademarks, sects. 505, 507. In *Leather Cloth Co. v. Hirschfield* (L. R. 1 Eq. 298) it was held that the law would not presume that the plaintiffs would have sold the amount of goods sold by the defendant; but the burden of proof was on the plaintiffs to show special damage by loss of custom or otherwise. *Peltz v. Eichele* (62 Mo. 161) was a suit for the defendant's breach of his covenant that he would not engage in the manufacture of matches for a stipulated time. The principles which controlled the decision were closely analogous to those involved in the present case. Said the court: "What the plaintiffs have lost by the defendant's breach of covenant, and not what the defendant has gained thereby, is the legal measure of damages in this case." It was there in proof that the plaintiffs' sales had been reduced about one-half after the defendant embarked in the business, in violation of his covenant.

There seems to be no disagreement among the authorities on this question. In the present case, even if

the erroneous instruction had not been given, the plaintiffs could have recovered no more than nominal damages, since there was no testimony tending to show that they had sustained any actual loss by the facts proved.

Upon the whole record, it is manifest that the plaintiffs were entitled to a recovery of nominal damages, and they will be permitted, on proper terms, to take a judgment to that effect in this court. If, within ten days after the filing of this opinion, the plaintiffs will remit all the damages awarded them by the circuit court, except the sum of one dollar, the judgment will be affirmed. Otherwise, the judgment will be reversed and the cause remanded. All the judges concur.