JOHN H. SCHWARTZ, Appellant, v. SAMUEL C. DAVIS & COMPANY *et al.*

**Wrongful Attachment Without Sale:** MEASURE OF DAMAGES. Where property wrongfully attached is taken from the possession of plaintiff's mortgagees who are selling it under their mortgages, and independent proceedings are brought by the attachment creditor under which, instead of the attachment, the property is sold by consent, nominal damages only can be recovered on the attachment bond.

FAILURE TO GIVE NOMINAL DAMAGES, NO REVERSAL. An omission to grant nominal damages will not warrant a reversal.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

MONDAY, FEBRUARY 5, 1894.

THE following is a statement of facts as made by appellant: "On the twenty-ninth of December, 1884, Samuel C. Davis & Company sued out of the district

court of Lee county an attachment against John H. Schwartz, the plaintiff herein, on the sole ground that Schwartz was then about to dispose of his property with intent to defraud his creditors.    Defendant Joseph A. Smith is surety on the attachment bond for forty-five thousand dollars, which was filed in that case.    The attachment was levied, on the day it was issued, on a stock of merchandise belonging to Schwartz, alleged to be of the value of one hundred and thirty thousand dollars.    J. H. Hellman and others served written notice on the sheriff of their claims to the attached property by virtue of several chattel mortgages thereon. Davis & Company immediately furnished an indemnifying bond, and the property was held under the levy. The attachment suit was, on the application of Davis & Company, removed to the United States circuit court for the eastern division of the southern district of Iowa, in which court Davis & Company filed a petition in equity, alleging the levy of said writ on said stock of merchandise, the property of Schwartz; that the levy was then of full force; and that by reason thereof, they were entitled to have a lien thereon, to secure their debt sued for in the attachment suit.    It was also alleged that Schwartz had made certain mortgages to Hellman and others, aggregating forty-two thousand, one hundred and ten dollars and eleven cents, on the attached property for the purpose of hindering and defrauding creditors.    The mortgagees and Schwartz were made defendants, and the prayer was that the mortgages be set aside; that the property be decreed to be the sole property of Schwartz, subject to their attachment; and that defendants be restrained from suing for the same.    In that suit Davis & Company subsequently filed an application for a receiver to take charge of and sell the attached property, on the ground that there was danger of deterioration in value, etc.    On the seventeenth of January, 1885, the court,

after hearing the evidence and arguments of counsel, appointed one Kiser receiver, and required him to cause the property to be appraised, and to sell and dispose of the same in such manner as he thought fit, at private sale, except that he should not sell at less than three fourths of the appraised value; the net proceeds of sale to be deposited in court, to the credit of said equitable suit. The receiver being thus fully empowered by this order to sell the entire property, a *pro forma* order was entered by the same court five days later in the attachment suit, with the consent of Schwartz, that, until further order, Kiser should act as receiver in the attachment suit, making his reports, however, only in the equity case. The attached property was appraised at eighty thousand, one hundred and sixty-nine dollars net, and was sold by the receiver for fifty thousand, one hundred and sixty-one dollars net. Schwartz and the mortgagees appeared and answered in the equitable suit, denying all allegations tending to show the invalidity of the mortgages. It was then stipulated that the attachment and equity suits, together with other attachment suits which had been subsequently brought against Schwartz, should be tried together. The causes were afterwards referred to P. T. Lomax, a master in chancery, for hearing, to report his findings of fact and conclusions of law for the information of the court. The master heard the causes, and on the first of January, 1890, five years after the attachment was sued out, filed a lengthy report of his findings and conclusions, to the effect that three of the chattel mortgages, although given to secure *bona fide* debts, were fraudulent as to creditors, and should be set aside. Exceptions to the report were filed, on the ground, among others, that the master should have found that the mortgagor and mortgagees acted in good faith, and that there was no evidence showing, or tending to show, any intention on the part of the

mortgagor or mortgagees to hinder, delay, or defraud the creditors of Schwartz. This exception, with others, was sustained, and the court, on the twentieth of June, 1890, adjudged all the mortgages to be valid, and that the debts secured thereby be first paid out of the proceeds of the sale of the attached property, which, being more than sufficient for that purpose, the balance of the fifty thousand, one hundred and sixty-one dollars was adjudged to be paid to certain attachment creditors of Schwartz. The present action is brought by Schwartz against Davis & Company and Smith, the surety on the attachment bond, to recover damages for the wrongful suing out of the attachment." The cause was tried to a jury that returned a verdict for defendants, and the plaintiff appeals.—*Affirmed.*

*C. L. Poor, D. H. Miller, Jr., A. H. Stutsman* and *Casey & Stewart* for appellant.

*S. L. Glascow, Eben Richards, J. D. M. Hamilton* and *James C. Davis* for appellees.

GRANGER, C. J.—I. At the trial in the district court the defendants offered in evidence the report of the master in chancery in the federal court for the purpose of showing his conclusions on the question of the fraudulent execution of the chattel mortgages. Against objections of incompetency, irrelevancy, and immateriality, a part of the report was admitted, and error is assigned upon the ruling. Appellees contend that, notwithstanding this and other alleged errors, the judgment should not be reversed, because in no event, under the record, could plaintiff recover more than nominal damages. If it should be conceded that the admission of the master's report involves reversible error, without which the jury would have found that the attachment was wrongfully sued out, we bring ourselves to a proper position from which to consider the

legal effect of the proposition urged by appellee, for then the remaining question for the jury would have been that of damages, which alone, the proposition embraces. The district court, after defining the measure of damage as being the difference between the market value of the goods at the time they were seized by virtue of the attachment and the amount realized from the receiver's sale and passed to the credit of plaintiff, added the following: "11. But in this connection it must be borne in mind by the jury that they can allow only such damages as are shown by the evidence to have proceeded directly from the levy of said attachment, and not such as may have arisen from the acts of plaintiff himself; and if you find from the evidence that prior to the levy of the writ of attachment in question the plaintiff had parted with the title to the property levied upon by the execution and delivery of mortgages upon the same, and had placed the said property in the possession of the mortgagees who were proceeding at the time of said attachment to foreclose their said mortgages upon said property, or to subject the same to their claims by sale or other legal procedure, and the property in question was not taken from the plaintiff by the levy of said attachment, but from the mortgagees of plaintiff, then the said defendant can not be held liable for any loss arising from the sale of said goods under legal process, unless it appears from the evidence that the said sale was under and by virtue of the attachment proceeding, and not under proceedings of the said mortgagees under their claims upon the property." Complaint is made of the instruction in that it in effect told the jury that the execution of the mortgages deprived plaintiff of his title to his property. The instruction expresses no more, in that respect, than such a parting with title as would result from the execution of the mortgages. The instruction seems to state the law correctly, as appli-

cable to the facts within the record. The evidence is not before us in full, and we can not determine the correctness of the instruction as applied to it. With the state of the record before us, it must stand as the law of the case. Appellant presents this view of the law as to actual damage: The writ was levied December 29, 1884. If the writ was wrongfully sued out, plaintiff was entitled to the market value of the goods at that date; and that he would receive by fixing the market value at that date, and deducting therefrom the amount realized from the receiver's sale. That is the general rule, and it was, in effect, given by the court, subject to the rule of the instruction in question; and we gather, as the thought of the instruction, that if, when the goods were taken on the writ, they were then, by an act of the plaintiff, being subjected to a sale by creditors, and they were not afterwards sold under the attachment, there would be no liability on the bond for a loss resulting from the sale, for it does not appear that the sale resulted because of the attachment. Other and independent proceedings were instituted, and the property was, confessedly, sold, by consent, under such proceedings. It does not appear that the other proceedings were induced by the attachment suit, and it is a necessary inference that the sale, as it occurred, would have taken place without the attachment suit. The real effect of the other proceedings was to supersede the attachment suit as to the sale. How, then, could there be a liability on the bond for the consequences of such a sale? Taking the instruction as giving a proper rule, we may apply it to the facts of the case. Had the jury, upon a finding, as we have assumed, that the attachment wrongfully issued, proceeded to assess the damages, it must have followed the instruction, and under it no actual damages could have been returned if, by the attachment, the property was taken, not from plaintiff, but from the mortgagees,

and it had been placed in their possession by the execution of the mortgages, and the mortgagees were, at the time of the seizure, proceeding to subject the same to their claims by sale or other legal procedure, unless the sale was under and by virtue of the attachment proceedings, and not under proceedings of said mortgagees. The undisputed facts take the case without the rule permitting damages. A fact additional to what has been stated appears in appellant's abstract as follows: "The mortgage debts were payable on demand. Payment had been demanded, and the mortgagees were in possession of the goods attached at the time the writ was levied, offering to sell the same in the usual way of trade." These facts, with those originally stated, show that the goods were not sold under and by virtue of the attachment proceedings; that they were taken from the mortgagees by virtue of the writ, where they were because of the mortgages; and they were, by sale, being subjected to the claims of the mortgagees. Applying the rule of the instruction to the facts of the case, the court could well have said to the jury that there could be no recovery of actual damages. The plaintiff, with the concessions herein made in his favor, was in no event entitled to more than nominal damages, and for such damages a new trial will not be awarded. *Williams v. Brown*, 76 Iowa, 643, 41 N. W. Rep. 377, and cases there cited. It is true that the cause involves a question of exemplary damages, but they do not follow nominal damages merely. *Kuhn v. Railway Co.*, 74 Iowa, 137, 37 N. W. Rep. 116. These considerations are conclusive of the case on this appeal. The record presents no error that should change the effect of our conclusion that, at best, only nominal damages could be obtained, for which we will not reverse the case. It is, therefore, AFFIRMED.