HARTFORD FIRE INS. CO. et al. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   October 7, 1895.)

No. 614.

1. CONTRACTS—PUBLIC POLICY—HOW DETERMINED.
     The public policy of a state or nation must be determined by its constitution, laws, and judicial decisions; not by the varying opinions of laymen, lawyers, or judges as to what the interest of the public demands.
2. SAME.
     A party who seeks to put a restraint upon the freedom of contract in any case must make it plainly and obviously clear that the contract in question is against public policy.
3. SAME—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
     Whether or not, in a lease by a railroad company of part of its right of way, a provision exempting it from liability for any damage to buildings or personal property situated thereon, resulting from the negligence of its officers or agents, or from fire communicated from its locomotives, is against public policy, is a question of general law, in regard to which the federal courts, while regarding the state decisions as persuasive authority, must in the end exercise an independent judgment.  62 Fed. 904, affirmed.  Caldwell, J., dissenting, on the ground that the proposition is wrong in principle, and its decision is not necessary to the decision of the case.
4. SAME—RAILROAD COMPANIES—CONTRACTS—LIABILITY FOR NEGLIGENCE.
     A lease by a railroad company of a portion of its right of way, upon condition that the company shall not be liable for any damage to buildings or personal property situated thereon by reason of fire originating from its locomotives, or for damage resulting from the negligence of its employés or agents, is not void, as against public policy, either under the Iowa decisions or upon general principles.  62 Fed. 904, affirmed.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

On February 1, 1890, the Chicago, Milwaukee & St. Paul Railway Company, the defendant in error, leased to Simpson, McIntire & Co., a copartnership, certain portions of its depot grounds at Monticello, in the state of Iowa, "upon the express condition that the said railway company, its successors and assigns, shall be exempt and released, and said parties of the second part [Simpson, McIntire & Co.], for themselves, and for their heirs, executors, and administrators, and assigns, do hereby expressly release them, from all liability or damage by reason of any injury to or destruction of any building or buildings now on, or which may hereafter be placed on, said premises, or of the fixtures, appurtenances, or other personal property remaining inside or outside of said buildings, by fire occasioned or originated by sparks or burning coal from the locomotives, or from any damage done by trains, or cars running off the track, or from the carelessness or negligence of employés or agents of said railway company." Simpson, McIntire & Co. had, or constructed, a cold-storage building and warehouse on the leased premises, stocked it with butter and eggs, and insured the buildings and stock with the Hartford Fire Insurance Company and seven other insurance companies, which are the plaintiffs in error, and the buildings and stock were burned. The insurance companies brought an action against the railway company in the court below, and alleged in their complaint that they had insured Simpson, McIntire & Co. against loss by fire on their cold-storage building, warehouse and stock; that these were destroyed by a fire caused by the negligence of the railway company on November 11, 1892; that the insurance companies had paid Simpson, McIntire & Co. $23,450 on account of their loss by this fire; that they were thereby subrogated to the rights of Simpson, McIntire & Co. against the railway company, and were entitled to recover from it that amount with interest. The railway company answered this complaint, and one of the defenses it pleaded was the condition of the lease to Simpson, McIntire & Co., by which they exempted and released the railway company from all liability for damage to their buildings and stock caused by fire set by the railway company. The plaintiffs in error demurred to this defense on the ground that this stipulation of the lease was against public policy and void. Their demurrer was overruled, and judgment was rendered against them thereon. The writ of error in this case was sued out to reverse this judgment, and the ruling upon the demurrer is the error assigned.

Charles A. Clark and Richard W. Barger, for plaintiffs in error.
Charles B. Keeler, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Is a condition, in a lease by a railway company of a portion of its right of way, that it shall not be liable to the lessee for any damage to any buildings or personal property thereon, caused by fire set by its locomotives, or by the negligence of its officers or servants, in violation of public policy, and therefore void? This is the question in this case. The public policy of a state or nation must be determined by its constitution, laws, and judicial decisions; not by the varying opinions of laymen, lawyers, or judges as to the demands of the interests of the public. Vidal v. Girard's Ex'rs, 2 How. 127, 197; U. S. v. Trans-Missouri Freight Ass'n, 7 C. C. A. 15, 73, 58 Fed. 58; Swann v. Swann, 21 Fed. 299. If this was a question of local law, or of the public policy of the state of Iowa alone, it would require little consideration by this court. There are many provisions of the

statutes of the state of Iowa relating to the duties of individuals and corporations to use care to prevent damage from fire. The two which bear most directly upon the question under consideration in this case are sections 1289 and 1308 of the Code of that state, which provide "that any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway" (McClain's Ann. Code Iowa 1888, § 1972); and "no contract, receipt, rule, or regulation, shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule, or regulation, been made or entered into" (Id. § 2007). In Griswold v. Railroad Co. (Iowa) 57 N. W. 849, the supreme court of Iowa considered these statutes and the public policy of that state, and, after repeated argument and the most careful deliberation, held that a provision in a lease by a railway company of a portion of its right of way, on which the lessee had placed an elevator and warehouse and personal property, which exempted the railroad company from liability for damages by fire negligently communicated by its servants to these buildings and their contents, violated no law of that state, was not injurious to the public interests, and was not against public policy. This was the decision of the highest judicial tribunal of that state. It constitutes an authoritative construction of the statutes of the state (Dempsey v. Township of Oswego, 4 U. S. App. 416, 435, 2 C. C. A. 110, 51 Fed. 97; Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, 53 Fed. 415; Travelers' Insurance Co. v. Oswego Tp., 7 C. C. A. 669, 674, 59 Fed. 58; Madden v. Lancaster County, 12 C. C. A. 566, 570, 65 Fed. 188) and a very persuasive authority that the contract here in question is not contrary to public policy.

Upon the latter question, however, it is not conclusive upon the national courts. Whether or not such a provision of a contract is against public policy is a question of general law, and not dependent solely upon any local statute or usage. Over this question the national courts exercise concurrent jurisdiction with those of the state, and, while the decisions of the latter are always entitled to the weight of persuasive authority, the federal courts must in the end exercise their own judgment. Railroad Co. v. Lockwood, 17 Wall. 357, 368; Myrick v. Railroad Co., 107 U. S. 102, 1 Sup. Ct. 425; Carpenter v. Insurance Co., 16 Pet. 495, 511; Swift v. Tyson, 16 Pet. 1; Railroad Co. v. National Bank, 102 U. S. 14; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10; Smith v. Alabama, 124 U. S. 465, 478, 8 Sup. Ct. 564; Bucher v. Railroad Co., 125 U. S. 555, 583, 8 Sup. Ct. 974; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 443, 9 Sup. Ct. 469. We turn accordingly to the consideration of this question.

Before entering upon its discussion, it is important to note the terms and effect of the lease before us, and the situation of the parties and of the property which was destroyed. Before the lease was made, the lessees had no right to enter upon, or to place any property upon, the leased premises, and the railway company owed to the lessees no duty to exercise ordinary care not to set fire to any

property on those premises, because, presumptively, there was none there, and because, if any one put any there, the only duty of the company was not willfully and wantonly to injure it, because it would be there in violation of law. If, however, the railway company should lease the right of way to Simpson, McIntire & Co., and should permit them to put buildings and personal property thereon, it would thereby subject itself to a new burden and assume a new duty,—the duty of exercising ordinary care to prevent the burning of their property on these premises by the operation of its railroad. It was apparently willing to discharge all the duties it owed to the public, and to every individual of the public, and it did not undertake, by this lease, to limit or restrict its liability to discharge any of those duties, but it simply undertook to prevent its assumption of a new duty. Its quasi public character as a railroad company, its position as a common carrier, imposed upon it no duty to lease any of its right of way to these lessees, or to any one else, nor had they, or any one, any right to the use of the leased premises before this lease was made. The property that was burned was the private property of the lessees. None of it was in process of transportation by the railway company, none of it was awaiting delivery by the company to its consignees after transportation, and none of it had been received by the company for transportation. The warehouses and the property in them bore the same relation to the carrying business of the company, according to this record, that the store and contents of any merchant or commission man would bear to it. Neither the lease, nor the relation of the property to the railway company, arose out of the discharge of any duty imposed upon the corporation by its position of a common carrier, or by its character of a quasi public corporation.

The question, then, is, was it a violation of public policy for the lessees to agree, under these circumstances, that, if they were permitted to put their buildings and property upon the right of way of the railroad company, and to use them thereon, the duties and liabilities of the latter to them, and to the public, should remain as they were before the lease was made, and should not be increased by any additional burden? No act of congress, no statute, no decision of any court (except a decision of the supreme court of Iowa, which was overruled by Griswold v. Railroad Co., supra), which prohibits such an agreement or declares it to be against public policy, has been called to our attention. Counsel for plaintiffs in error present a carefully prepared and exhaustive argument, by analogy, to show that such an agreement is detrimental to the public welfare, and against public policy, but their contention rests entirely upon that argument. If the analogy fails, the argument falls. The argument runs in this way: A contract by a railroad company with one of its employés, or with a passenger, or with a shipper, to exempt itself from liability for negligence in operating its railroad is against public policy and void. Railway Co. v. Payne, 29 Kan. 169; Railway Co. v. Eubanks, 48 Ark. 460, 3 S. W. 808; Railroad Co. v. Lockwood, 17 Wall. 357; Express Co. v. Caldwell, 21 Wall. 264, 267; York Co. v. Central Railroad, 3 Wall. 107; Bank of Kentucky v. Adams Ex-

press Co., 93 U. S. 174, 181, 183, 185; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 440, 441, 9 Sup. Ct. 469. The contract to exempt the railway company from liability for damage to the property of these lessees, caused by fires resulting from the negligence of the railway company, is similar to contracts with its employés, passengers, and shippers to exempt it from liability to them for negligence in operating its railroad. Therefore, the provision for exemption in this lease is against public policy, and void. But the analogy fails in that vital part which constitutes the reason and foundation of the rule established by the authorities cited. Its fallacy is, that the law imposes upon a railroad company the absolute duty to operate its railroad, to employ suitable men to operate it, to exercise ordinary care to furnish them with a reasonably safe place in which to render their services, and with reasonably safe machinery and appliances with which to perform them. Any breach of this duty is a violation of the law which imposes the duty. It is also an immeasurable injury to the public interests, because it endangers the lives and limbs of citizens, which are of the highest value to the state and nation. A contract which exempts the carrier from negligence in the discharge of these duties is void, because it relieves it of an absolute duty which the law imposes upon it, and because it unreasonably endangers the lives of employés and passengers. But the law imposes no duty upon a railroad company to lease its right of way, or to use ordinary care not to set fires that would burn property placed upon it by strangers without its permission. In the former case, public policy and the law impose upon the carrier the duty to hire employés, to operate its railroad with reasonable care, in order to protect its employés from injury, and therefore it may not contract to be relieved from the law and the duty. The carrier has no choice. It must perform these duties, or forfeit its charter. In the latter case, no duty to lease is imposed. The company has the option—the choice—to lease or to refuse to lease; and if it does lease, and does stipulate for indemnity from damages caused by its negligence in firing the property of the lessee placed upon the leased premises by its permission, that contract in no way relieves it from the discharge of any duty to the public, or to any citizen, that the law or public policy had imposed upon it.

Again, the law imposes upon a railroad company the absolute duty to accept passengers and freight when offered, and to carry the former with the utmost, and the latter with ordinary, care. The passenger is often obliged to travel, and the shipper to send his goods, by railroad. In making their contracts, they do not stand on an equal footing with it. They cannot stop to negotiate and settle the terms of a contract, every time they desire to use the railroad. They would often prefer the abandonment of the contracts to such negotiations. On the other hand, the railroad company, with its trained employés, and its monopoly of the transportation facilities sought, has the ability and the power to exact the contract it desires. This inequality in the situation of the parties, which would, if permitted, enable the railroad company to obtain unfair contracts

from passengers and shippers, and the fact that contracts with them, which exempt the company from liability for negligence, relieve it from an absolute duty imposed by the law, and thus violate it, and at the same time increase the danger to the lives and property of the people from the operation of a railroad, constitute the reasons for the decisions that have established and maintain the rule that such contracts are against public policy. Railroad Co. v. Lockwood, 17 Wall. 357, 369, 378, 379; York Co. v. Central Railroad, 3 Wall. 107, 112; Express Co. v. Kountze, 8 Wall. 342, 353; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 440, 443, 9 Sup. Ct. 469; Express Co. v. Caldwell, 21 Wall. 264, 267, 268.

But the defendant in error and Simpson, McIntire & Co., did not stand on unequal footing. The lessees were not compelled to lease of the railroad company. The latter had no monopoly of land in Iowa. Each party had the option to execute, or to refuse to execute, the lease. The condition exempting the company from liability for damages to the property of the lessees caused by fire set by the negligence of the company relieved the company from no duty it was required by law to perform, but simply provided that it should not assume an additional burden, which it had the option to take or to refuse. Thus, in the case at bar, all the reasons for the rule avoiding contracts exempting common carriers from liability for negligence failed. And it is difficult to perceive how the proposition that this rule should govern this case can be successfully maintained.

It is said that it was the duty of the railroad company to furnish suitable warehouses for the receipt of butter and eggs offered to it for transportation, and already transported, but awaiting delivery to the consignees, that it was bound to exercise ordinary care not to burn the contents placed in such warehouses by it as a carrier, and that, if it employed Simpson, McIntire & Co. to receive and store the goods of its shippers, it was bound to exercise the same degree of care to protect the goods in their possession. Stock-Yards Co. v. Keith, 139 U. S. 128, 133, 136, 11 Sup. Ct. 461. It is a conclusive answer to this contention that there is nothing in this record to show that the railroad company ever had employed Simpson, McIntire & Co. to receive or store any of the goods of its shippers. Moreover, if it had done so, it is not perceived why the contract of these lessees to take the risk of, and to hold the railroad company harmless from, any damage to such property from fires caused by the negligent operation of the railroad, would not have been valid. It goes without saying that the railroad company could have legally employed an insurance company to indemnify it against loss by fire occasioned by the negligence of its servants. If there were goods of its customers burned in the warehouse, the lessees had, in effect, insured the railroad company against damages for their loss, and the insurance companies had insured the lessees. No reason is perceived why these contracts were not valid.

It is said that a statute which should provide that a railroad company should not be liable to the owner of property for damages to it by fire, caused by the negligence of the company, would be un-

constitutional and void, because it would authorize the taking of private property without due process of law, and without compensation, and that, therefore, the contract here in question is void. But a statute enacting that a private individual who should construct a building or store personal property upon the right of way of a railroad company should be deemed guilty of negligence, and should not be permitted to maintain any action against the company for its destruction by fire, occasioned by the negligence of the latter in the operation of its railroad, would not be obnoxious to this objection, nor detrimental to the public interest, and it is not perceived how a contract to that effect could be.

- The public policy of this nation, with reference to contracts of common carriers exempting them from liability for negligence, was established and declared by the decisions of the supreme court in Railroad Co. v. Lockwood, 17 Wall. 357, 384; Express Co. v. Caldwell, 21 Wall. 264, 267, 268; and Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 440, 441, 9 Sup. Ct. 469. In the leading case of Railroad Co. v. Lockwood, 17 Wall. 357, 384, Mr. Justice Bradley declared the rules by which the validity of such contracts must be determined to be:

"First, that a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law; secondly, that it is not just and reasonable, in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; thirdly, that these rules apply both to carriers of goods and carriers of passengers for hire, and with special force to the latter."

In Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, at page 441, 9 Sup. Ct. 469, Mr. Justice Gray thus states the rule in a single paragraph:

"Special contracts between the carrier and the customer, the terms of which are just and reasonable, and not contrary to public policy, are upheld, —such as those exempting the carrier from responsibility for losses happening from accident, or from dangers of navigation that no human skill or diligence can guard against; or for money or other valuable articles, liable to be stolen or damaged, unless informed of their character or value; or for perishable articles or live animals, when injured without default or negligence of the carrier. But the law does not allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions which are unreasonable and improper, amounting to an abnegation of the essential duties of his employment."

The burden is on the party who seeks to put a restraint upon the freedom of contracts to make it plainly and obviously clear that the contract is against public policy. U. S. v. Trans-Missouri Freight Ass'n, 7 C. C. A. 15, 82, 58 Fed. 58; Printing & Registering Co. v. Sampson, L. R. 19 Eq. 462; Tallis v. Tallis, 1 El. & Bl. 391; Rousillon v. Rousillon, 14 Ch. Div. 351, 365; Stewart v. Transportation Co., 17 Minn. 372, 391 (Gil. 348); Marsh v. Russell, 66 N. Y. 288; Phippen v. Stickney, 3 Metc. (Mass.) 384, 389. In our opinion, the plaintiffs in error fall far short of sustaining this burden, and our conclusions are:

The reasons why an unreasonable and unjust contract between a common carrier and another, exempting the former from liability

for negligence, is against public policy, and void, are, that it attempts to release the carrier from the discharge of the essential duties imposed upon it by law, that the parties to the contract are not upon an equal footing, and that it tends to endanger the lives and limbs of passengers and employés.   A contract in a lease by a railroad company of a portion of its right of way, that it shall not be liable to the lessees for any damage, caused by fire set by the negligence of itself or of its employés, to the buildings or personal property which the lessees have or place on the leased premises, does not fall within this rule, and is not void because it does not fall within its reasons.   A railroad company does not assume by such a contract to relieve itself of any of its essential duties as a common carrier or as a quasi public corporation.   The contract leaves it under the same duties and liabilities to which it was subject before it was made.   It is bound to the same diligence, fidelity, and care, after a lease containing such a contract is executed, that it would have been required to exercise if no such agreement had been made. Express Co. v. Caldwell, 21 Wall. 264, 267, 268.   The only effect of the contract is to prevent the assumption by the railroad company of a new duty, which it was entirely free to assume or to refuse to assume.   It does not tend to endanger the lives of the employés or passengers of the company, and the parties to it stand upon an equal footing when the lease is made because each is free to make or refuse to make the contract.

For these reasons the judgment below must be affirmed, with costs, and it is so ordered.

CALDWELL, Circuit Judge (dissenting).   I concur in the conclusion reached in this case but dissent from this statement in the majority opinion, namely:

"Upon the latter question, however, it is not conclusive upon the national courts. Whether or not such a provision of a contract is against public policy is a question of general law, and not dependent solely upon any local statute or usage."

The contract referred to is a lease of real estate situated in Iowa. The lease was made and executed, and its covenants were to be performed, in that state.   The supreme court of Iowa held the lease and all its conditions valid under the laws of that state.   No decision of the supreme court of the United States has been cited, and it is believed none can be found, holding that this decision of the supreme court of Iowa is not binding on this court.   But, however this may be, there is no difference of opinion between the supreme court of Iowa and this court as to the validity of the lease and all its conditions, and there is, therefore, no occasion for this court to express an opinion upon the question whether it would be bound by the decision of the supreme court of Iowa if the two courts differed in opinion on the question of public policy.   What is said on this subject is not necessary to the decision of the case, and, moreover, is not law.   A "local statute," declaring such a condition in a lease to be either valid or void, would undoubtedly be obligatory on this and all other courts.   There are weighty reasons why a

question of this character should not be lightly considered. The most serious blot on the American system of jurisprudence is that whereby a question affecting the rights and liabilities of a citizen may be differently decided by courts of different governments, whose judgments are equally binding and final. This unfortunate condition of our jurisprudence results from our dual system of government. It has no existence in any other country, and ought to be confined within the narrowest limits possible in this. Nothing can be more repugnant to one's sense of justice, or to a uniform and harmonious administration of the law, than to require the citizen to be bound by conflicting decisions of courts of different governments. Under the operation of this unseemly rule, a suit against one in a state court may be decided one way, and a suit against the same party in the federal court, involving the very same question, may be decided the other way. As a result of these diverse rules of decision, each party to a suit engages in an unseemly struggle to get into that jurisdiction whose rules of decision are believed to be most favorable to his side of the case. It was the hope that this court would overrule the decision of the supreme court of Iowa in a similar case that caused the removal of this case into the circuit court. The class of questions as to which different rules of decision may obtain, and the federal courts may disregard the decision of the state courts thereon, has not been very clearly defined. What is said here has reference, of course, to nonfederal questions, such as the one raised in this case. As to federal questions, there is but one rule of decision, and one court of last resort. The general statement has been often made that the federal courts are not bound to follow the decisions of state courts on questions of general jurisprudence, when unaffected by state legislation; but no exact enumeration has ever been made, or ever can be made, of the questions that come within this general definition. Moreover, the decisions of the supreme court relating to the subject are not uniform or harmonious. The question as presented by this record is not free from doubt. It is a question upon which the court should not express an opinion, except when necessary to the decision of the case, and that necessity does not exist in this case.