# JACOB LAMPERT v. JUDGE & DOLPH DRUG COMPANY et al., Appellants.

**Division Two, December 19, 1911.**

1. **DAMAGES: Nominal.** For every infraction of his legal right the party injured is entitled to nominal damages.

2. ————: ————: **Punitive.** A verdict for nominal actual damages will support a verdict for punitive damages.

3. ————: **Punitive: Legal Malice.** Punitive damages are recoverable where legal malice is shown. Legal malice, as distinguished from actual malice, is the willful or intentional doing of a wrongful act without legal justification or excuse.

4. ————: ————: **Wrongful Act a Crime.** The right to exemplary damages is not removed by the fact that the wrongful act is also a crime.

5. ————: ————: **Infringing Trade-mark.** A seller of cigars placed cigars of an inferior quality in a box marked with the registered trade-mark of a cigar maker and sold them as that maker's cigars. *Held*, that such maker is entitled to punitive damages for the infringement of his trade-mark.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Frank K. Ryan* for appellants.

(1) The appellants are entitled to have the judgment herein set aside, because the respondent did not prove any actual compensatory damages, and, therefore, the court below erred in allowing the jury to find exemplary damages; for nominal damages will not support exemplary damages. Hoagland v. Forest Park Am. Co., 170 Mo. 335; Sutherland on Damages, sec. 406; Kuhn v. Railroad, 74 Iowa, 137; Schwartz v. Davis, 90 Iowa, 324; Frees v. Triple, 70 Ill. 496; Meider v. Authis, 71 Ill. 241; Gaunsly v. Perkins, 30 Mich. 492; Maxwell v. Kennedy, 50 Wis. 654. (2) Adding-

ton v. Cullinane, 28 Mo. App. 238, still remains the controlling authority in this State on the question of damages in a case at law for the infringement of a trade mark. There can be no doubt but what it prohibits exemplary damages where there are no actual damages sustained by the plaintiff. (3) There was no ground for the jury to consider exemplary damages, because there was no evidence that the acts complained of were accompanied by circumstances of malice or oppression. Beck v. Dowell, 111 Mo. 509; Firearms Co. v. Shields, 171 N. Y. 384; Dooling v. Pub. Co., 144 Mass. 258. (4) According to the law of this State, and the weight of authority in other jurisdictions, exemplary damages are prohibited, and only compensatory damages allowed in cases for the infringement of trade-marks. Such is the rule also in analogous actions for the infringement of patents. Addington v. Cullinane, 28 Mo. App. 238; Ransom v. Mayor, 1 Fish. Pat. Cas. 252; Parker v. Hulme, Id. 44; Taylor v. Carpenter, 2 Wood & M. 1; Hennessy v. Wilderming-Loewe Co., 103 Fed. Rep. 90; Wilbur v. Beecher, 2 Blatch. 200; Ball v. Wise, 2 Blatch. 200; Hasselden v. Ogden, 3 Fish. Pat. Cas. 378; Russell v. Place, 5 Fish. Pat. Cas. 134; Seymour v. McCormick, 16 How. 489.

*Jamison & Thomas* for respondent.

(1) For the violation of every legal right, nominal damages, at least, will be allowed. Fulkerson v. Eads, 19 Mo. App. 620; 2 Sutherland on Damages, 13. (2) The law is now well settled that where a legal right has been invaded the plaintiff may recover nominal damages, although there may be no evidence of actual damages sustained. 13 Cyc. of Law and Proc., p. 14, and cases cited note 11; McCutchin v. Ballerton, 1 Mo. 342; Brown v. Emerson, 18 Mo. 103; Sheedy v. Press Brick Works, 25 Mo. App. 527; Cravens v. Hunter, 87 Mo. App. 456; Conrad v. Brewing Co., 8 Mo.

App. 277; Weber v. Squier, 51 Mo. App. 601; Barrie v. Seidel, 30 Mo. App. 559. (3) Nominal actual damages will sustain exemplary or punitive damages. Mills v. Taylor, 85 Mo. App. 111; Ferguson v. Pub. Co., 72 Mo. App. 462; Favorite v. Cottrill, 62 Mo. App. 119; 12 Ency. Law (2 Ed.), 30; Wilson v. Vaughn, 23 Fed. Rep. 229; Pub. Co. v. Monroe, 73 Fed. Rep. 196; Ala. etc. Co. v. Sellers, 93 Ala. 9; Atlanta, etc. Co. v. Condor, 75 Ga. 51; Helfley v. Baker, 19 Kan. 9; Prince v. Brooklyn Eagle, 19 Misc. Rep. (N. Y. Sup.) 186; Champion v. Vincent, 20 Tex. 811; Flannagan v. Wormack, 54 Tex. 45; Robinson v. Goings, 63 Miss. 500. (4) In all cases of torts where a defendant acts maliciously, willfully, or with gross negligence, so as to indicate a wanton disregard of the rights of others, punitive damages are allowed. Kennedy v. Railroad, 36 Mo. 351; Perkins v. Railroad, 55 Mo. 201; State v. Jungling, 116 Mo. 165; Albers v. Merchants' Exchange, 138 Mo. 140; Dorsey v. Railways, 83 Mo. App. 528; Wamsganz v. Wolf, 86 Mo. App. 205; Reamer v. Express Co., 93 Mo. App. 501; 5 Ency. Law (1 Ed.), p. 22, and cases cited in note 1; Day v. Woodworth, 13 Howard (U. S.) 363; Buckeley v. Knapp, 48 Mo. 152; Sedgwick on Measure of Damages, 520. (5) Punitive damages are allowable, even though the same acts are punishable as a crime. Corwin v. Walton, 18 Mo. 71; Gray v. McDonald, 104 Mo. 303. (6) The weight of authority and the best logical reasoning is in favor of the proposition that punitive damages are allowable in actions at law for infringement of trade-marks and substitution of goods. Hopkins on Unfair Trade, pp. 241-242; 4 Sutherland on Damages, note 1 to sec. 1202, p. 3476; Warner v. Roehr, 29 Fed. Cas. 266; Hall on Trade-marks (1903), sec. 324; Brown on Trade-marks (2 Ed.), sec. 520; Day v. Woodworth, 54 U. S. (13 Howard) 371; Fortheringham v. Express Co., 36 Fed. Rep. 252; Railroad v. Humes, 115 U. S. 512; Bar-

ry v. Edwards, 116 U. S. 550; Railroad v. Harris, 122 U. S. 597. (7) The case of Addington v. Cullinane, 28 Mo. App. 238, does not decide or hold that exemplary or punitive damages cannot be allowed in a case at law for the infringement of a trade-mark.

ROY, C.—This is a suit instituted February 23, 1904, in the circuit court of the city of St. Louis for damages for the infringement of a trade-mark. On a jury trial October 19, 1904, plaintiff had a verdict for one cent compensatory damages and $500 punitive damages, and judgment accordingly. On appeal to the St. Louis Court of Appeals the judgment was reversed in an opinion reported in 119 Mo. App. 693. One of the judges of that court being of the opinion that the decision is in conflict with Kennedy v. Railroad, 36 Mo. 351, the cause was certified to this court.

The Judge & Dolph Drug Company, one of the defendants, is a corporation engaged in selling drugs and cigars at retail in St. Louis for a good many years. Defendant Taylor was the cigar clerk of the company from October, 1900, to the time of the trial.

Plaintiff claimed in his petition that he had been making and selling cigars in St. Louis for fifteen years under a trade-mark which was composed of the words "Flor de Lampert" and the picture of the plaintiff, which trade-mark was by the plaintiff on February 26, 1892, filed and recorded in the United States Commission of Patents Office.

That by reason of the quality of the tobacco used and the efforts of plaintiff in advertising the same, the plaintiff's cigars sold under said trade-mark had gained great reputation on account of their excellent quality; and that during all that time plaintiff had received large profits from the sale of the cigars. That plaintiff during the time from March 11, 1902, to February 15, 1904, sold to defendants cigars so manufactured by plaintiff, on the boxes of which was said

trade-mark, and said cigars were so sold to defendants to be sold at retail to their customers.  That during all that time defendants, well knowing the reputation of plaintiff's cigars for excellent quality, did wrongfully, wilfully and wickedly substitute and place other cigars of cheap and inferior quality in the boxes bearing said trade-mark and sold them to their customers as and for cigars manufactured by the plaintiff, thereby intending to injure the plaintiff and to injure the reputation of plaintiff's cigars, and to cheat and defraud the public and their customers.  The actual damages were alleged at $5000, and the punitive damages at the same amount.

The answer admitted the corporate existence of the drug company, but was, in effect, otherwise a general denial.

The evidence tended to establish all the allegations of the petition, and tended to show several sales by Taylor as such clerk of substituted inferior cigars from boxes having said trade-mark.

Defendant Taylor was arrested and fined in the Federal court for violation of the revenue laws in such sales.  The revenue officers testified to finding the substituted cigars in boxes having plaintiff's trademark, in the defendant's store, and at the same time finding plaintiff's genuine cigars in another such box. The president of defendant drug company loaned Taylor $25 to pay his fine in the Federal court and retained him in its employ.

Mr. Bierman, deputy collector of internal revenue, testified that he bought three of the substituted cigars and that two were left in the box; he went out and gave the cigar to Mr. Lampert, and when he went back there were sixteen cigars in the box.  On cross-examination by defendant's counsel, Mr. Atwood, deputy collector of internal revenue, testified that complaints had been made to him by various other cigar makers that defendants were substituting their cigars.  Mr. Farrar,

a real estate man, testified that the substituted cigars were like "these machine cigars, so they call them; smooth, round, straight, light cigars, that haven't any taste, no flavor."

There was no direct evidence to show that any one connected with the drug company except Taylor had any knowledge of the infringement.    Mr. Judge, president of the drug company, disclaimed any knowledge of any substitution of cigars, and testified that the company carried a $90,000 stock of goods with $80,000 insurance and was worth net $10,000, with $15,000 capital stock.

The fourth and fifth instructions were as follows:

"4.    The court instructs the jury that if they believe from the evidence that the defendants wilfully and maliciously, between the dates of November 1, 1903, and February 15, 1904, sold cigars which were not manufactured by plaintiff, from boxes having thereon the trade-mark and picture of plaintiff, as cigars manufactured by plaintiff, and if the jury further finds from the evidence that the plaintiff is entitled to compensatory or actual damages in any sum whatever, as defined in other instructions given to them, then they are at liberty to find in addition to said actual damages such further sum in the way of exemplary or punitive damages, by way of punishment to defendants, and as an example to others, as in their sound judgment, under all the evidence in the case, they believe the defendants ought to pay, not exceeding $5,000.

"5.    The jury are instructed that malice is the wilful or intentional doing of a wrongful act without legal justification or excuse."

## OPINION.

I.    The trial court properly refused defendant's demurrer to the plaintiff's evidence.    The evidence fully covered the plaintiff's case as made by the plead-

ings, except that there was no evidence as to the quantum of damages. It is the clearly established law that for every infraction of his legal ·right the party injured is entitled to at least nominal damages, and we adhere to the opinion of the Court of Appeals on that point.

II.    Whether exemplary damages are recoverable where there are allowed only nominal actual damages is a question as to which the authorities are divided, the courts of this State and the Federal courts, as well as legal reason, and the greater weight of authority, being in favor of such recovery.

Some of the decisions of the courts speak of nominal damages as being something else than actual damages, whereas the nominal damages assessed for the violation of a legal right where there is no showing as to the quantum of damages are actual or compensatory damages.   This court has spoken very clearly on that subject in Hoagland v. Amusement ·Co., 170 Mo. l. c. 345, where it is said: ''The jury in finding for plaintiff in effect found that defendants arrested the plaintiff and cursed and abused him without any lawful excuse or reason therefor, and upon that finding he was entitled to have actual damages in some amount assessed in his favor.   Under such circumstances at the common law he is entitled to pecuniary reparation by way of damages, at least nominal, and as much more, if anything, as the jury may think him entitled to under the evidence.''

The consensus of authority is to the effect that punitive damages are not recoverable where no actual damages are allowed.   But that is a very different thing from holding that they are not recoverable in connection with nominal actual damages.   There are comparatively few cases holding that nominal actual damages will not support exemplary damages.

The leading case in opposition to the allowance of punitive damages where only nominal actual damages are allowed is Stacy v. Portland Pub. Co., 68 Me. 279, for libel. The court in that case cited no authorities, and its reasons for so holding were based almost entirely on the peculiar facts of that case, and in the conclusion the following language is used: "There may be cases, no doubt, where the actual damages would be but small and the punitive damages large. But this case is not of such a kind." That case was followed and approved in Maxwell v. Kennedy, 50 Wis. 645.

The cases cited by appellants from Illinois and Michigan turned on the construction of statutes against the sale of intoxicants to inebriates and have no application here. The Iowa cases, Kuhn v. Railway, 74 Iowa 137, and Schwartz v. Davis, 90 Iowa 324, were based on the Illinois cases, the Iowa court seemingly overlooking the fact that the Illinois cases only applied to suits brought under the statute.

On the other hand, the Supreme Court of New York, in Prince v. Brooklyn Eagle, 16 Misc. 186, after citing the Stacy case, said: "But I do not think it is the law of this State; a person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value and necessity."

In Press Pub. Co. v. Monroe, in the United States Circuit Court of Appeals, 73 Fed. 196, it is said: "There is room for argument against the allowance of exemplary damages at all as anomalous and illogical. Some courts have held that it is unfair to allow the plaintiff to recover not only all the loss he has actually sustained, but also the fine which society imposes on the offender to protect its peculiar interests. But if it be once conceded that such additional damages may be assessed against the wrongdoer,

and, when assessed, may be taken by the plaintiff—and such is the settled law of the Federal courts—there is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury, but is unable to prove that he is poorer in pocket by the wrongdoing of defendant," and in Railroad v. Sellers, 93 Ala. 9, the court, after quoting from the Stacy Case, said: "The position of the Supreme Court of Maine can be sustained in principle, it seems to us, only by assuming that which is manifestly untrue, namely, that no act is criminal which does not inflict individual injury capable of being measured and compensated for in money."

The Supreme Court of Kansas, in Hefley v. Baker, 19 Kan. 9, which was a suit in trespass to the realty, held that plaintiff "was only entitled to nominal damages and to such exemplary damages as the jury might think proper to give him."

In Flanagan v. Womack, 54 Texas 45, 51, the court said: "It is a general rule, that for every unlawful trespass the injured party is entitled to at least nominal damages. Certainly this should be so if the trespass was of such character as to authorize exemplary damages. This nominal damage would be the measure of the actual damage if no other is shown, and must necessarily arise in every case in which exemplary damages could be given."

The United States Circuit Court for the District of Kansas held in Wilson v. Vaughn, 23 Fed. 229, in favor of the rule allowing punitive damages in connection with nominal damages.

We come now to a consideration of the decisions in this State on the question. The first in order of time is Favorite v. Cottrill, 62 Mo. App. 119, in which

258 Sup.—27

Judge BIGGS said, after quoting from the Stacy Case: "But there is a line of decisions, equally respectable, which hold to the contrary." In Ferguson v. Publishing Co., 72 Mo. App. 462, a libel case, Judge BOND clearly and satisfactorily upholds the right to punitive damages in such cases, and his opinion is quoted and commended in 2 Sutherland on Damages, sec. 406.

To the same effect is Mills v. Taylor, 85 Mo. App. l. c. 115. And it was said in Brennan v. Maule, 108 Mo. App. l. c. 338: "It is now settled in this State that actual damage in at least a nominal sum must be found as a condition for the recovery of exemplary or punitive damages" It may be interesting in this connection to call attention to Courtney v. Blackwell, 150 Mo. l. c. 277, in which the damages for slander were assessed at a lump sum as punitive damages, there being no finding as to actual damages on account of oversight in the form of the verdict given to the jury. This court refused to reverse the case on account of the failure to find actual damages.

Our attention has been called to many infringement cases in equity in which the courts refused to order an accounting where plaintiff's damages were nominal or very small. The remedies in equity and at law are radically different. Equity gives as damages the profits of the defendant; while the law limits them to the loss suffered by plaintiff. Equity restrains future wrongs by injunction. Law seeks to prevent such future violations by inflicting exemplary damages for past offenses.

We hold that a verdict for nominal actual damages will support a verdict for punitive damages.

III. It is insisted by appellant that exemplary damages are not recoverable in this case for the alleged reason that there is no showing of malice or oppression. On that proposition we are forced to a different conclusion from that reached by the Court of Appeals.

We concede that the cases there cited require that there shall be malice in the case. There are two kinds of malice; malice in fact, and malice in law. Legal malice as distinguished from actual malice will justify exemplary damages in this State.

In Goetz v. Ambs, 27 Mo. 28, 33, the court says: "If the injury is not intentional, but results simply from a want of proper care, nothing more should be recovered than will compensate for the actual damage; but if the act is wilful or intentional then 'the idea of compensation is abandoned, and that of punishment introduced. It is said generally that malice must exist to entitle the plaintiff to anything more than reparation for the injury; but it will be found that the word malice is always used, in such connections, not in its common acceptation of ill-will against a person, but in its legal sense, willfulness, a wrongful act, done intentionally, without just cause.'"

"To entitle the plaintiff to recover punitive damages he must show that the act complained of was unlawful, and further that it was a wanton or malicious act. In other words he must show an unlawful act coupled with an intentional wrong." [State v. Jungling, 116 Mo. l. c. 165.]

"The average layman would believe that malicious means ill-will, spite, holtility towards the other party. This is not the legal meaning. Those feelings may or may not be present in the legal meaning of the term. The legal meaning of the term is the intentional doing of a wrongful act without just cause or excuse." [McNamara v. St. Louis Transit Co., 182 Mo. l. c. 681.]

The Supreme Court of the United States held in Railroad v. Arms, 91 U. S. 489, that punitive damages could be allowed in actions for torts where the injury is wilful or is the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

We therefore hold that the question of malice and punitive damages was properly submitted in the fifth instruction.

IV. We come now to the consideration of the question as to whether cases for the infringement of trade-marks are outside the rule allowing exemplary damages. Appellants claim they are. They call our attention to a long line of patent cases which were held by the courts not to be within the rule as to exemplary damages; and appellants claim that trade-mark cases are governed by the same rule as in patent cases. An examination of those cases, however, will reveal the fact that in 1836 it was provided by act of Congress that the jury should not in patent cases allow vindictive damages, but that the court should have the power to inflict punitive damages within the limits of trebling the actual damages found by the jury. [Seymour v. McCormick, 16 Howard, 480.]

It will thus be seen that those cases rest solely on the act of Congress and are not authority for appellant's contention.

The Am. and Eng. Ency. Law, vol. 28, 438, holds that exemplary damages cannot be recovered, citing Taylor v. Carpenter, 2 Woodb. & M. (U. S.) 1, decided by the United States Circuit Court at Boston, in 1846. In that case the court (l. c. 22) said: "So in very corrupt or flagitious wrongs, if a criminal prosecution lies for the public offense, I do not see much justification for what are called vindictive damages there, or smart money in the civil suit, as the criminal one covers them."

That reasoning is opposed to the well established law in this State, as this court has uniformly held that the right to exemplary damages is not removed by the fact that the same wrongful act is punishable criminally. [Corwin v. Walton, 18 Mo. 71; Gray v. McDonald, 104 Mo. 313; Buckley v. Knapp, 48 Mo. 152.]

The only other case found which lends color to appellants' contention on this point is Addington v. Cullinane, 28 Mo. App. 238. That was an action at law for damages for the infringement of a trade-mark. There was an instruction telling the jury that the measure of damages was the net profits made by defendants, unless there was malice on the part of defendants, in which case they might find exemplary damages. The learned judge who wrote the opinion in that case held the instruction erroneous because it made the defendants' gain instead of plaintiffs' loss the measure of actual damages. He did not discuss the subject of exemplary damages, and we do not construe that case as expressing any opinion on that subject.

Hopkins on Trade-Marks, page 356, says that the better rule is in favor of such allowance and that it is difficult to see how the result stated in Taylor v. Carpenter and Addington v. Cullinane, supra, was reached, adding, "They are wholly without precedent and opposed to the rule of damages which obtained at common law."

Judge BLODGETT in Warner v. Roehr, Fed. Case No. 17189a, a case for the infringement of a trademark, in the Northern District of Illinois, instructed the jury that exemplary damages might be allowed "in cases of this character, where you are satisfied from the proof and from the admissions in the case that the fraud—the intention to defraud—is at the bottom of the matter." Paul on Trade-Marks, sec. 324, and Browne on Trade-Marks, secs. 519 and 520, hold in favor of such allowance.

If the jury found all that the evidence tended to prove, they found that the clerk, Taylor, was making a practice of substituting cheap cigars in boxes with plaintiff's trade-mark thereon, and also in place of the cigars of other makers, to such an extent that various makers of cigars complained to the revenue officers; that Taylor was fined in the Federal court for

such substitution, and the president of the company loaned him the money to pay the fine and retained him as such clerk, showing that if the higher officers of the company knew nothing of his wrongdoing while it was going on, they did not repudiate him after learning all about it; that the well-earned reputation of various brands of cigars had being besmirched, and customers were being disappointed and disgusted with cheap substitutes for their favorite smoke.   In other words Taylor, as such clerk, was running amuck in the cigar world, destroying reputations and offending tastes, all done willfully, intentionally and without any sort of justification or excuse, for dishonest gain.   Yet from the very nature of the trade it was practically impossible to prove more than nominal actual damages.

It must be remembered that this case has been briefed on both sides on the undisputed theory that the acts and intent of the clerk in making said sales bind the drug company as effectually as if done by the president of the company himself.

The judgment is affirmed, *Bond, C.,* not sitting.


PER CURIAM—The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All the judges concur.