**Arthur F. SIMPKINS, Sandra C. Simpkins, and Employers Mutual Casualty Co., Appellants,**

v.

**RYDER FREIGHT SYSTEM, INC., Respondent.**

**No. WD 45808.**

Missouri Court of Appeals, Western District.

May 18, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

**418**

David Eugene Elliott, Lee's Summit, for appellants.

Don B. Roberson, Kansas City, for respondent.

Before BRECKENRIDGE, SHANGLER and SPINDEN, JJ.

SHANGLER, Judge.

The plaintiffs Simpkins, husband and wife, appeal a judgment entered upon a jury verdict for the defendant Ryder Freight System, Inc.[1]

The petition alleged that a semi-trailer truck operated by Ryder approached from behind and struck and attempted to force the vehicle occupied by the Simpkins off the traveled roadway. This was done with the intent to cause harm to the plaintiffs, the petition alleged, and was conduct reckless, willful, wanton and malicious. The prayer was for actual and punitive damages.

In the early course of the litigation, the plaintiffs commenced discovery and served upon Ryder interrogatories and a request for production of documents. The requests were neither objected to nor fully complied with. On April 10, 1989, Judge William W. Ely, then assigned to the case, sustained the plaintiffs' motion for sanctions under Rule 61.01(b) & (d).[2] The order struck Ryder's pleadings and entered *judgment by default* on plaintiff's petition and directed further that *trial shall be had on the issues of actual and punitive damages only.* Thereafter, on May 10, 1989, without notice to plaintiffs, the court sustained Ryder's motion to set aside the April 10, 1989, order and directed that plaintiffs' motion for enforcement of discovery and/or sanctions be set at a later date.

There followed a motion by plaintiffs to set aside the May 10, 1989, order directing the appointment by Judge Ely of a master, Senior Judge Julian M. Levitt, to make recommendations on the issues presented by the pending motion to set aside the May 10, 1989 order; the report of the master; and, finally, a hearing on November 2, 1989, by Judge Ely on the legal conclusions of the master's report. The order that issued was to reinstate the order for sanctions entered on April 10, 1989: to strike the Ryder pleadings, enter "judgment by default" in favor of the Simpkins petition, and that "trial be had on the issues of actual and punitive damages only."

The case was thereafter assigned to a different circuit judge, and two years later,

---

1. Employers Mutual Casualty Company, insurer of the Simpkins vehicle, is also a plaintiff as subrogee of the sum paid to the Simpkins for repair of their vehicle. Employers also appeals.

 The petition joined as defendants Robert B. Halford and Sandra L. Halford, alleged to be employees of defendant Ryder and operating the Ryder truck within the scope of their employment at the time of the collision. The Halfords were never served with process and were dismissed from the action before the commencement of the trial.

2. This order of sanctions was preceded by plaintiffs' motion to enforce discovery, by the warning of the court to Ryder to make responses within 10 days or to "risk imposition of sanctions," and then by a renewed motion for sanctions based upon the neglect of Ryder to make full responses thereafter. We need not recount that spate of motions, countermotions and orders and counterorders that followed that first sanction. Indeed, there is no complaint by the defendant Ryder on this appeal that the sanction entered by the court on April 10, 1989, or any of the successive orders of sanction were without cause.

in November of 1991, the case came on for trial. At the conclusion of all the evidence, the Simpkins tendered instructions A, B, C, D and E and verdict forms compatible with the theory of the substantive submissions. Instructions A and B directed the jury that under the law, the defendant was liable to the plaintiff for damages as a result of an assault committed against plaintiff, and that the jury must award the plaintiff at least "nominal actual damages." [3] The validity of these submissions rested on the premise that the assault cause of action pleaded in the first amended petition for damages was deemed as proven by the trial court's sanction order of "judgment by default," and that trial be had "on the issue of actual and punitive damages only." Instructions C, D and E were tendered on the same premise. They were cast on the MAI 31.07 model, and directed that, "Under the law, defendant is liable to plaintiff for damages in this case." [4]

The plaintiffs also moved for a directed verdict on the issue of the liability of defendant Ryder for assault as already adjudicated by the default judgment, and for "at least" the nominal damages that attend a "direct injury tort." The argument on the motion construed the default judgment sanction to have reserved for jury determination "the issues of the *amount* of actual damages [and] the entitlement to punitive damages." [Emphasis added].

The trial court refused the plaintiffs' motion for directed verdict on the issue of the defendant Ryder's liability, and refused also the tender of verdict directors on the MAI 31.07 model. The court deemed the tendered submissions to be erroneous and directed the plaintiffs to submit "a 23 ser-

ies." The plaintiffs protested at "having been told that the trial would be had on the issue of damages only and then told afterwards that [they] had another burden to carry." Nevertheless, the court expressly vacated "the Court's earlier orders" the default judgment against defendant Ryder with the trial limited to actual and punitive damages only and submitted the plaintiffs Simpkins' claims under MAI 23.01 and the plaintiff Employers Mutual Casualty Company's claim under MAI 23.02. MAI 23.01 is the verdict director for assault. MAI 23.02 is the verdict director for battery. These verdict directors submitted to the jury the issue of the defendant Ryder's liability. The damage claimed by the plaintiffs Simpkins was apprehension of bodily harm. The damage claimed by the plaintiff insurer was that to the insured vehicle. The issue of compensation for actual damages was submitted by MAI 4.01 and punitive damages, on behalf of each of the Simpkins plaintiffs, by MAI 10.01.

It is evident from the colloquy at the presubmission conference that the court deemed MAI 31.07 not applicable because Ryder claimed that the plaintiffs Simpkins were not damaged; therefore, the issue of damage was still in controversy. It is evident also that the plaintiffs understood that since liability for assault was already adjudicated by the "default judgment" sanction, recovery of nominal damages followed as a matter of course so that, under the law [and MAI 31.07], Ryder was liable to plaintiffs for damages in the case. That notion assumes that nominal damages is a species of actual damages, so that the controversy was not the issue of damages, but

---

3. Instructions A and B directed the jury:

"Under the law, because defendant is liable to plaintiff for damages as a result of an assault committed against plaintiff, you must award plaintiff at least nominal damages. Nominal damages can be indicated by entering the amount of one dollar $1.00 in your verdict form, in the space provided for actual damages."

The model for these instructions was not in MAI. The instructions, rather, are derived from *Wright v. Jasper's Italian Restaurant, Inc.*, 672 F.Supp. 424 (W.D.Mo.1987).

4. The full text of each, Instruction C and D, cast in the form of MAI 31.07 tendered: "Under the law the defendant is liable to plaintiff for damages in this case. Therefore, you must find the issues in favor of plaintiff and award plaintiff such sum as you believe will justly compensate plaintiff for any damages you believe [s]he sustained as a direct result of the occurrence mentioned in the evidence."

Instruction E submitted the same theory on behalf of plaintiff Employers Mutual Casualty Company, but in terms of damage to the Simpkins vehicle measured by its before and after fair market value.

the amount of damages. We are told that much by tendered Instructions A, B, C and D. *See* fns. 3 and 4.

The appeal rests on the assignment of two fundamental trial errors: (1) the impropriety in vacating the interlocutory judgment of default as to the liability of defendant Ryder at the close of the evidence, and (2) the impropriety in requiring the plaintiffs to instruct by verdict directors that submit the issue of Ryder's liability for jury determination. The numerous other separate points and arguments are dependent and cognate, as discussion makes evident.

### Order Vacating the Interlocutory Default Judgment At the Conclusion of the Evidence

The order vacating the interlocutory default judgment sanction was not requested. It was the court's own initiative, and made without expression of reason. The order was prompted by the rejection of verdict directors on the MAI 31.07 model, which tendered the amount of damages as the only issue. The court insisted instead on the MAI 23.01 assault verdict director, which submits the issue of liability and MAI 4.01 which finds damages. That insistence first implicitly, then directly countermanded the interlocutory judgment of default entered two years before.

The plaintiffs Simpkins argue that an interlocutory judgment of default may be validly vacated only for cause and upon notice and that neither condition was met. In support, they cite Rules 74.05(c), 74.06 and 75.01 almost at random. Rule 74.05 relates to interlocutory orders of default or judgments of default for failure to file a responsive pleading. These are defaults *nihil dicit. Smith v. Sayles*, 637 S.W.2d 714, 717[3–10] (Mo.App.1982). Rule 74.06 governs relief from judgments already final, as does Rule 75.01. *In re Marriage of Clark*, 813 S.W.2d 123, 126[7] (Mo.App. 1991); *Bell v. Garcia*, 639 S.W.2d 185, 188[3–5] (Mo.App.1982).

■ The stricken pleadings and default judgment entered against Ryder as sanctions under Rule 61.01(b) & (d) for failure to give discovery expressly reserved for trial "the issues of actual and punitive damages." To be final a judgment must operate *in praesenti. State ex rel. Great Am. Ins. Co. v. Jones*, 396 S.W.2d 601, 603[1–3] (Mo. banc 1965). It must determine all of the issues in the case. *Joy v. Safeway Stores, Inc.*, 755 S.W.2d 13, 14[1] (Mo.App.1988). A judgment that leaves some question or direction for future determination does not operate *in praesenti*, and is interlocutory only. *State ex rel. Great Am. Ins. Co. v. Jones*, 396 S.W.2d at 603. Accordingly, the order entered as a sanction was an interlocutory judgment of default. It was not nevertheless a default for failure to plead or otherwise defend, and therefore was not a default *nihil dicit. State ex rel. Webster v. Ames*, 791 S.W.2d 916, 917[2, 3] (Mo.App.1990).

■ Thus, the procedure of Rule 74.05(c) does not govern to set aside an interlocutory judgment of default entered as a sanction for failure to give discovery, nor do good cause and a meritorious defense color the prerogative of the court to act to that end. The incongruence of a condition that the party sanctioned by an answer stricken and adverse judgment for unjustified resistance to discovery justify relief from that judgment because the party has a meritorious defense to plead is self-evident. Yet only a meritorious defense and good cause can relieve a party from a default judgment under Rule 74.05(c). It becomes all the more incongruous because *good cause* within Rule 74.05(c) describes conduct "that is not intentionally or recklessly designed to impede the judicial process."

■■ A "default judgment" imposed as a sanction under the rules of discovery is not governed by Rule 74.05 because it is not a true default judgment. It "does not come by default in the ordinary sense, but is treated as a judgment upon trial by the court." *In re Marriage of Dickey*, 553 S.W.2d 538, 539[1] (Mo.App.1977); *Hayes v. Hayes*, 677 S.W.2d 933, 934 (Mo.App.1984). The rationale is that a presumption arises from the failure of a defendant to produce information necessary to the disposition of

a cause that there is no merit in the asserted defense. *Jewell v. Jewell,* 484 S.W.2d 668, 672[2] (Mo.App.1972); *State ex rel. Jones v. Reagan,* 382 S.W.2d 426, 430[6] (Mo.App.1964). It is apt, therefore, that the principle that governs the vacation of sanction for failure to obey a discovery order is the principle that governs the imposition of sanction the discretion of the court. *In re Marriage of Dickey,* 553 S.W.2d at 539[1]; *Kingsley v. Kingsley,* 601 S.W.2d 677, 678 (Mo.App.1980).

" '[A]n interlocutory order is always under the control of the court making it ... At any time before final judgment a court may open, amend, reverse, or vacate an interlocutory order ...' " *State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 232 (Mo. banc 1969). It is both logical and just that a trial court retain control in order to correct errors, or, in its discretion, to modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable. *"Of course, any such action should be taken only after proper notice to the parties."* *Id.* at 232[5] [emphasis added]. *State ex rel. Wagner v. Ruddy,* 582 S.W.2d 692, 694[3] (Mo. banc 1979). It is fundamental to our common law sense of ordered and fair adjudications, moreover, that a litigant have opportunity to be heard on matters that affect the party's interest. *Hoppe v. St. Louis Pub. Serv. Co.,* 361 Mo. 402, 235 S.W.2d 347, 350[7] (banc 1950).

■ The action of the trial court in vacating the interlocutory judgment of default sanction immediately before submission of the case was neither orderly, logical nor fair. It was prompted by no trial necessity, done without reason, and radically distorted the issues and the burdens of the parties as to them. It was an abuse of discretion. *Anglim v. Missouri Pac. R.R.,* 832 S.W.2d 298, 303[6–9] (Mo. banc 1992). The action, moreover, was without notice or real opportunity for the parties affected to be heard. *In re Jackson's Will,* 291 S.W.2d 214, 225[22–26] (Mo.App.1956). The order to vacate the default judgment sanction, as noted, was prompted by the rejection of verdict directors on the MAI 31.07 model, which tendered the *amount* of damages as the only issue. The court was correct to refuse those tendered instructions. Those instructions, as the opinion explains, conformed to neither the directive of the sanction order that the interlocutory judgment of default did not adjudicate "the issues of actual and punitive damages," nor to the law as to the nature of damages that attend a proven assault. The court was not correct, however, to require the plaintiffs to submit their theory of assault under MAI 23.01. MAI 23.01 submits assault as a disputed issue, but the assault was already deemed admitted and proven by the interlocutory judgment of default sanction. The action of the court to simply set aside the sanction was not a logical response to the improper theory of damages that the plaintiffs tendered. That was already corrected by the court's instructions under MAI 4.01. Punitive damages were also submitted under MAI 10.01. Thus, to fairly and fully determine the issues reserved for trial by the sanction, the court need only have additionally instructed the jury that the liability of the defendant Ryder to the plaintiffs for assault was admitted. *Curtis v. Fruin–Colnon Contracting Co.,* 270 S.W.2d 537, 540[3–5] (Mo.App.1954).

Instructions are given as instructions of the court. Rule 70.02(d). When the court gives an instruction not offered by a party, it is required to give a correct one. *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 878[10–12] (Mo.App.1984). MAI 23.01 was not the correct instruction under the interlocutory judgment of default, then still intact, when the court insisted on that submission for the plaintiffs.

There is no intimation in the record that the decision to vacate the interlocutory judgment of default was to correct an error, or to undo an oppressive order, or for any other end of the administration of justice. The court gave no reason, except to say: "It was an interlocutory order." The consequences were that the pleadings of the defendant Ryder were reinstated, the issue of liability reintroduced, and the burden to prove the claim reimposed on the plaintiffs, all after the close of the evidence and in circumstances where the defendant

had denied the plaintiffs the discovery that would have enabled proof of the claim. By then, as expected, the evidence was closed and the plaintiffs, operating under the deemed liability of the defendant Ryder under the judgment of interlocutory default, presented no evidence as to liability. The issue was nevertheless submitted to the jury to find under MAI 23.01.

In the course of deliberations, the jury submitted a question for the court's answer: "We the jury request any further information concerning the truck. Specifically, any identification #'s or license plate #'s on the truck driven by the Halfords." It is evident that the jury was preoccupied with the issue of whether the plaintiffs had sufficiently identified defendant Ryder's truck, and hence had satisfied that premise of liability. Ironically, it was the recalcitrance of the defendant Ryder to respond to the discovery requests of the plaintiffs for documentary information concerning the presence of defendant Ryder's truck in the vicinity of Kansas City at the time of collision that was a basis for the sanction and deemed admission of liability. It is unconscionable for a party to flout an order to give discovery, and then profit from the sanction for that refusal to the helpless disadvantage of the offended adversary.

It was an abuse of discretion for the trial court, at the conclusion of the evidence, to set aside the interlocutory judgment of default that deemed the liability of the defendant proven. Moreover, in the circumstances of a jury distracted from a proper verdict by a false issue of liability, the abuse of discretion was prejudicial to a fair trial.

Accordingly, the cause must be reversed and remanded for new trial.

### The Issue of Damages on an Eventual Retrial

The theory of damages that the plaintiffs Simpkins argued at the trial and tendered by their instructions A, B, C, & D assumes that nominal damages is a species of actual damages, so that the controversy was not the issue of damages, but the *amount* of damages. This assumes a mistaken premise, yields mistaken reasoning and does not govern the law of damages to be applied in an eventual retrial.

 Nominal damages are damages awarded merely as a recognition of some breach of a duty owed by defendant to plaintiff and not as a measure of compensation for loss or detriment suffered. C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 20 (1935); *Seelig v. Missouri K. & T. Ry.*, 287 Mo. 343, 230 S.W. 94, 102[3, 4] (1921). In general theory, nominal damages are allowed where a legal right has been invaded but no actual damages were suffered or proven. *McClellan v. Highland Sales & Inv. Co.*, 484 S.W.2d 239, 241[1–4] (Mo.1972); *Wente v. Shaver*, 350 Mo. 1143, 169 S.W.2d 947, 954[5] (1943). The principle derives from the common law action for trespass for violence to person or property. For wrongs which are trespasses such as assault and battery the rule remains that proof of the defendant's wrongdoing enables the plaintiff to recover nominal damages, though no loss or damages is shown beyond the invasion of right shown. C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 22 (1935); *Conway v. Kansas City Pub. Serv. Co.*, 234 Mo. App. 596, 125 S.W.2d 935, 940 (1939).

 In these instances, the law simply presumes that damage resulted. *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 681[17, 18] (Mo.App.1985). It is for the reason that these damages are not true damages at all, but imputed to vindicate an invasion of right that otherwise would go without redress, that they are in name only *nominal.* RESTATEMENT (SECOND) OF TORTS § 907 (1979); *Seelig v. Missouri, K. & T. Ry.*, 287 Mo. 343, 230 S.W. at 102[3, 4]; *Weaver v. Jordan*, 362 S.W.2d 66, 75[6] (Mo.App.1962); 22 AM.JUR.2d *Damages* § 12 (1988). It is where the invasion of right has produced no actual present loss of any measurable kind, therefore, that nominal damages are recoverable. *McClellan v. Highland Sales & Inv. Co.*, 484 S.W.2d at 241[1–4]; *Weaver v. Jordan*, 362 S.W.2d at 75[6]; 25 C.J.S. *Damages* § 2 (1966).

Accordingly, nominal damages are fixed at a trifling sum, usually no more than $1.00, sometimes less. *Seelig v. Missouri, K. & T. Ry.*, 287 Mo. 343, 230 S.W. at 102[3, 4]; 22 AM.JUR.2d *Damages* § 11 (1988). A judgment for nominal damages nevertheless is a substantial right since such a judgment determines the incidence of costs. *Curd v. Reaban*, 232 S.W.2d 389, 392[4–6] (Mo.1950). It gives a "peg to hang costs on." *Davis v. Broughton*, 369 S.W.2d 857, 864[9] (Mo.App.1963). It also suffices to sustain an award of punitive damages. *Herberholt v. DePaul Community Health Center*, 625 S.W.2d 617, 624[5–7] (Mo. banc 1981); RESTATEMENT (SECOND) OF TORTS § 908, comment c (1979).

It is evident that our law marks a difference between nominal and actual damages and that one is not a species of the other. They are neither fungible nor admixable. It is the absence of actual damage that renders the defendant's misconduct liable to nominal damages. *McClellan v. Highland Sales & Inv. Co.*, 484 S.W.2d at 241[1–4]; RESTATEMENT (SECOND) OF TORTS § 907 (1979). Actual damages, on the other hand, are not presumed but must be proven. *Weaver v. Jordan*, 362 S.W.2d at 75[6].

In the circumstances of a liability for trespass to their persons deemed proven, the Simpkins were entitled to have incorporated into the damages instruction a limitation to nominal damages. *Seelig v. Missouri, K. & T. Ry.*, 287 Mo. 343, 230 S.W.2d at 102[3, 4]. Instructions A and B were that attempt. The terminology used, however, gives the understanding that nominal damages are a kind of actual damages.[5] Then, read together with their proffered Instructions C and D, (see fn. 4), they are understood as directions to the jury that not only nominal damages shall issue as a matter of law, but that the defendant Ryder was liable for actual damages to the Simpkins in some amount. Actual damages, however, was an issue not foreclosed by the interlocutory judgment of default but left open for proof and jury verdict.

The judgment is reversed and the cause remanded for a new trial.

All concur.

---

5. Instructions A and B are tenders of limitation of damages by awards of no less than $1.00. They direct: "under the law" defendant Ryder was liable to each Simpkin plaintiff "for damages as a result of an assault committed against plaintiff[s], therefore you must award plaintiff[s] at least *nominal actual damages*." [Emphasis added]. The instructions further directed that "nominal damages" could be indicated by entering $1.00 on the verdict form "in the space provided for *actual damages*." [Emphasis added]. The source for Instructions A and B is cited as *Wright v. Jasper's Italian Restaurant, Inc.*, 672 F.Supp. 424 (W.D.Mo.1987). The *nominal actual damages* terminology does not appear in that decision.

The terminology *nominal actual damages* was used in the early cases and now occasionally, and anomalously, still carried forward to evade the common law rule that "punitive damages are not recoverable where no actual damages are allowed." *Lampert v. Judge & Dolph Drug Co.*, 238 Mo. 409, 141 S.W. 1095, 1097[3] (1911). *Lampert* noted, nevertheless, that in the circumstances of the case [a patent infringement] "at the common law [plaintiff] is entitled to pecuniary reparation by way of damages, at least nominal." *Id.* Thus, the consensus at common law that punitive damages are not recoverable without actual damages "is a very different thing from holding that they are not recoverable in connection with *nominal actual damages*." *Id.* [Emphasis added]. This was justified by the fiction that the nominal damage was "the measure of the actual damage, if no other is shown." *Id.* 141 S.W. at 1098.

The developed law, as we explain, is that the law vindicates the breach of a right by nominal damage where no actual damage is shown, and that a measurable actual damage fully redresses the breach of right, thus nominal damage serves no purpose. The fiction of *nominal actual damages* is now without function. It is by now forthrightly established that a nominal damages award of $1.00 will sustain punitive damages. *Herberholt v. DePaul Community Health Center*, 625 S.W.2d at 623[5–7].