

# In the Missouri Court of Appeals
## Western District

ROBBY and KIM SALSMAN, )
    Respondents, )
v.    ) WD81780
    )
VINCENT and SHAUNA LEONARD, )
    Respondents, ) FILED:
FIRST CLASS PROPERTY )
INSPECTIONS, LLC, )
    Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE MARCO ROLDAN, JUDGE

### BEFORE DIVISION THREE: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

First Class Property Inspections, LLC ("First Class") appeals the circuit court's denial of its motion to compel arbitration of claims brought by Robby and Kim Salsman (collectively, "the Salsmans"). First Class contends the court erred in denying the motion to compel because the plain language of the arbitration agreement required the parties to arbitrate their disputes. First Class also argues that the court, which had originally granted the motion to compel arbitration but later denied it upon reconsideration, lacked the authority to reconsider its order because the proceedings had been stayed until completion of the arbitration

process.  For reasons explained herein, we affirm the denial of the motion to compel arbitration.

## FACTUAL AND PROCEDURAL HISTORY

The Salsmans agreed to purchase the home of Vincent and Shauna Leonard (collectively, "the Leonards") in Grain Valley.  The Salsmans allege that, during the course of negotiations, the Leonards represented that they had built the home approximately twelve years earlier and that there were no problems or flaws concerning the home's walls or exterior brick.  Prior to closing on the home, the Salsmans retained First Class to perform a pre-purchase inspection of the home.  The inspection and subsequent report given to the Salsmans did not identify any mold or water damage on the property.  After the purchase occurred, however, the Salsmans discovered mold and water damage in the home's basement.

The Salsmans filed a petition for damages against the Leonards and First Class alleging breach of contract, fraudulent misrepresentation, negligent misrepresentation, and negligence.  First Class filed a motion to compel arbitration asserting that its inspection agreement with the Salsmans contained a valid arbitration clause, which required that this dispute be submitted to final and binding arbitration.  The clause stated:

> Any dispute, controversy, interpretation, or claim including claims for, but not limited to, breach of contract, any form of negligence, fraud, misinterpretation, or any other theory of liability arising out of, from, or related to this contract or arising out of, from, or related to the Inspection performed or The Inspection Report shall be submitted to final and binding arbitration under the Rules and Procedures of the

2

> Expedited Arbitration of Home Inspection Disputes of Construction
> arbitration [sic] Services, Inc. The arbitrator appointed must be
> knowledgeable in and familiar with the professional home industry.
> The decision of the arbitrator appointed shall be final and binding, and
> judgment of the award may be entered in any court of competent
> jurisdiction.

(Emphasis in original). The circuit court initially determined that the arbitration agreement was valid and ordered First Class and the Salsmans to arbitration. The order also stated that a jury trial would proceed to dispose of the Salsmans' allegations against the Leonards.

Several months later, the Salsmans filed a motion for reconsideration asserting that the arbitration agreement was impossible to perform as written because Construction Arbitration Services, Inc., ("CAS"), the arbitration entity named as the arbitral body for the parties' disputes, had stopped providing arbitration services approximately six years prior to the formation of the inspection contract between the Salsmans and First Class. The Salsmans requested that the court reconsider its prior ruling and either deny the motion to compel arbitration or specify which language in the arbitration agreement the court had reformed to make their compliance with the order possible. The circuit court granted the Salsmans' motion to reconsider, vacated its previous order, and denied First Class's motion to compel arbitration. This interlocutory appeal followed. Both parties

agree that this appeal is properly before this court pursuant to Section

435.440.1(1), RSMo 2016. [1]

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

Whether the circuit court properly granted or denied a motion to compel

arbitration is a question of law that we review *de novo*. *Ellis v. JF Enters., LLC*,

482 S.W.3d 417, 419 (Mo. banc 2016). Prior to compelling the parties to enter

arbitration, the circuit court must "determine whether a valid arbitration agreement

exists and, if so, whether the specific dispute falls within the scope of the

arbitration agreement." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo.

banc 2006). If the court determines that the agreement to arbitrate is valid and the

dispute alleged is within the scope of the agreement, it must then assess "whether

the arbitration agreement is subject to revocation under applicable contract

principles." *Gentry v. Orkin, LLC*, 490 S.W.3d 784, 788 (Mo. App. 2016) (internal

citation and quotations omitted).

<h2 style="text-align:center">ANALYSIS</h2>

First Class brings four points on appeal, which we will address out of order.

Point III, relating to the propriety of this appeal, is no longer at issue given the

parties' acknowledgment that an interlocutory appeal can be taken from the denial

of motion to compel arbitration. The remaining points challenge the circuit court's

---

[1] All statutory references are to the Revised Statutes of Missouri 2016.

procedural authority to reconsider the arbitration motion and the substantive basis for the denial.  We will first address the procedural arguments in Points IV and II.

**Motion for Reconsideration**

In Point IV, First Class asserts that the circuit court erred in granting the Salsmans' motion for reconsideration because it lacked jurisdiction to enter further orders after compelling the parties to arbitrate their dispute.  First Class contends the court could re-establish jurisdiction over the case only after the binding arbitration proceeding was complete.

In discussing jurisdiction, the Supreme Court explained that Missouri courts recognize two kinds of jurisdiction—personal jurisdiction and subject matter jurisdiction. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo banc 2009).  "In modern terms, personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *Id*. at 252-53.  Subject matter jurisdiction refers to "the court's authority to render a judgment in a particular category of case." *Id.* at 253.  Personal jurisdiction derives from the federal Constitution, while subject matter jurisdiction arises from article V, section 14 of the state's constitution, which reads, in pertinent part: "(a) The circuit courts shall have original jurisdiction over all cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court." *See Webb*, 275 S.W.3d at 253-54.

5

First Class's argument implicitly asks us to reverse the circuit court pursuant to an understanding of subject matter jurisdiction renounced in *Webb*. Prior to *Webb*, some courts discussed a third conceptualization of "jurisdictional competence," which referred to cases in which the court undoubtedly had subject matter jurisdiction but a party asserted that a statutory provision or procedural consideration curtailed or removed the *jurisdictional* authority of a court to enter a specific judgment. *Id.* at 254. In *Webb*, however, that concept was replaced with the understanding that, "[w]hen a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant." *Id.* at 255. Understanding that distinction, we turn to the Uniform Arbitration Act ("UAA") to determine the court's authority in regard to the motion for reconsideration.

The UAA grants the circuit court the *statutory* authority to hear motions concerning the existence of arbitration agreements and establishes the available remedies. § 435.355. The Act allows the court to "summarily" determine whether the parties have a valid arbitration agreement and, in cases where the court concludes a valid agreement exists, order the parties to arbitration. *Id.* First Class asserts that, in cases where the parties are ordered to arbitration, the court loses jurisdiction over the proceeding until arbitration is complete. As discussed, *supra*, following the holding in *Webb*, First Class's contention is actually that the court lacked statutory authority to enter an order on the motion for reconsideration. First Class has provided no authority, statutory or otherwise, to support this

6

contention.  In fact, the UAA clearly provides the court the statutory authority to act prior to the submission of an arbitrator's award.  *See* § 435.360 (authority to appoint arbitrators in certain circumstances); § 435.370 (authority to compel arbitrators to promptly proceed to hearing and disposition); § 435.380 (authority to enforce subpoenas issued by or on the behalf of arbitrators); § 435.385 (authority to fix dates for the making of an award in certain circumstances).  The UAA limits the remedies the circuit court can provide both pre- and post-award, but it does nothing to limit the court's authority to hear the motion for reconsideration.

First Class mistakenly relies on our decision in *State ex rel. Telecom Mgmt., Inc. v. O'Mally*, 965 S.W.2d 215 (Mo. App. 1998), to support its claim of lost authority.  In *O'Mally*, the circuit court, after finding that "the panel had been arbitrary and biased against [one party]," ordered the recusal of the arbitrators and the sealing of all documents and orders from the arbitration proceeding.  *Id.* at 217-18.  We reversed, finding that there was no statutory authority to order the recusal of arbitrators prior to their making an award.[2]  *Id.* at 220-21.  In direct conflict with First Class's assertion, however, we stated that remedial authority for pre-award court intervention is set forth in Sections 435.350 and 435.355, which allow courts to determine the existence or enforceability of a contested arbitration provision.  *Id.* at 219.  Nothing in *O'Mally* supports First Class's contention that the

---

[2] Our decision in O'Mally is an example of an opinion that conflates statutory authority with jurisdictional competence and, after the decision in *Webb*, any discussion of jurisdictional competence should be understood as a reference to statutory authority.

7

court was without jurisdiction to hear the Salsmans' motion for reconsideration. Point IV is denied.

In Point II, First Class argues that the circuit court abused its discretion in granting the Salsmans' motion for reconsideration because it failed to identify any grounds or bases for its decision. We find no error in the court's summary determination.

The circuit court initially entered an interlocutory order ordering the parties to arbitrate their dispute. However, "Missouri does not follow the doctrine that a motion once ruled cannot be reconsidered." *Nicholson v. Surrey Vacation Resorts, Inc.*, 463 S.W.3d 358, 365 (Mo. App. 2015). "At any time before final judgment a court may open, amend, reverse or vacate an interlocutory order." *Id*. (internal citation and quotations omitted). Thus, the court's original motion was open to reconsideration, and First Class has cited no authority that specifically curtails the court's ability to enter an order reversing its prior entry. Furthermore, First Class's contention that the second arbitration order did not specify the grounds for reconsideration is unavailing, as summary orders are permitted by statute.[3]

---

[3] Section 435.355.1 states:

> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, *the court shall proceed summarily to the determination of the issue so raised* and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

(Emphasis added). Our Supreme Court has interpreted the phrase "proceed summarily" to mean proceedings "conducted '[w]ithout the usual formalities [and] without a jury.'" *Nitro*, 194 S.W.3d at 351 (quoting BLACK'S LAW DICTIONARY 1476 (8th ed. 1999)). As there are no outstanding issues

8

First Class argues that the court's grant of the Salsmans' motion for reconsideration in close temporal proximity to the scheduled arbitration date was an abuse of discretion similar to that found in *Simpkins v. Ryder Freight Sys., Inc.*, 855 S.W.2d 416, 422 (Mo. App. 1993). At the close of the evidence in *Simpkins*, the circuit court vacated an interlocutory judgment of default that it had previously entered as a sanction for discovery violations. *Id.* at 419. We reversed and remanded for a new trial because the vacated order charged the jury with the issue of liability when that issue had already been determined by default and there was "no intimation in the record that the decision to vacate the interlocutory judgment of default was to correct an error, or to undo an oppressive order, or for any other end of the administration of justice." *Id.* at 421. We were particularly concerned that the burden of proof had been reimposed on a party after it was stripped of any ability to present proof of liability. *Id.* at 421-22. Nothing in the record in this case, however, presents similar concerns for First Class.

After arguing that "the agreement to arbitrate establishes that the Home Inspection Dispute Construction Arbitration Services, Inc. as the entity to administer and fully settle . . . any dispute, controversy, interpretation, or claim between the parties[,]" First Class retained the services of a different arbitrator, Construction Dispute Resolution Services, LLC ("CDRS"). When discussions between the parties' counsel stalled, First Class paid the Salsmans' half of the

---

of fact preventing adjudication, which could require an evidentiary hearing, the circuit court's relatively sparse order was not statutorily deficient. *See id.* at 352

9

arbitration fee and requested CDRS begin the proceedings based on the court order compelling arbitration. The Salsmans then filed the motion to reconsider asking the court to either reverse the previous order or identify which portions of the contract were being reformed to allow CDRS to arbitrate in place of CAS. Unlike in *Simpkins*, the court in this case did not vacate its original order after First Class's opportunity to present any evidence or make arguments in support of its motion to compel had lapsed. In fact, First Class was able to present arguments in opposition to the motion to reconsider. *Simpkins* presented unique circumstances concerning the ongoing effect of an interlocutory order of default. First Class's contention that the payment of an arbitration fee and the assignment of an arbitrator somehow severs the court's authority to act finds no support in *Simpkins*. Consequently, Point II is denied.

**Enforceability of Arbitration Provision**

In Point I, First Class argues that the circuit court erred in granting the Salsmans' motion for reconsideration because the plain language of the agreement required the parties to arbitrate their disputes. First Class contends that the public policy favoring arbitration is so strong, we should default to arbitration on any discrepancy between the contract and the current arbitration proceeding.

We consider three factors in reviewing a motion to compel arbitration. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 434 (Mo. App. 2010). "First, we must determine whether a valid arbitration agreement exists." *Id.* (internal citation and quotations omitted). Second, if we determine the parties have a valid

agreement to arbitrate, we must then determine if the dispute alleged is within the scope of the agreement. *Id.* Third, if we determine that a valid agreement exists and the dispute is within the scope of that agreement, we must consider whether the agreement to arbitrate is revocable under applicable principles of contract. *Id.* at 434-35.

"The essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014) (internal citation and quotations omitted). "Underlying those elements is the requirement of 'mutuality of agreement,' which requires that both parties assented to the terms of the contract." *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, 428 S.W.3d 683, 688 (Mo. App. 2014). The Salsmans argue that there was no mutuality of agreement or "meeting of the minds" concerning arbitration and, therefore, we should find that the arbitration provision contained in the inspection agreement is unenforceable. They also contend that First Class is now seeking to improperly modify the arbitration agreement to enforce a contract to which the Salsmans never assented.

Arbitration is solely a creature of contract and, thus, a party "'cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'" *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017) (alteration in original) (quoting *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Accordingly, in our review of an arbitration agreement, we "apply the usual rules of state contract law and canons of contract

11

interpretation." *Nitro*, 194 S.W.3d at 345. "The cardinal principle guiding contract interpretation is that the intention of the parties must be ascertained and given effect." *Jackson Cty. v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo. App. 2006). In interpreting the contract, however, we endeavor to "use the plain, ordinary, and usual meaning of the contract's words and consider the whole document." *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo. App. 2001).

First Class argues that the language of the arbitration clause is not ambiguous and plainly requires that the parties proceed to arbitration for disposition of the Salsmans' claims. The arbitration clause states:

> Any dispute, controversy, interpretation, or claim including claims for, but not limited to, breach of contract, any form of negligence, fraud, misinterpretation, or any other theory of liability arising out of, from, or related to this contract or arising out of, from, or related to the Inspection performed or The Inspection Report shall be submitted to final and binding arbitration under the Rules and Procedures of the Expedited Arbitration of Home Inspection Disputes of Construction arbitration [sic] Services, Inc. The arbitrator appointed must be knowledgeable in and familiar with the professional home industry. The decision of the arbitrator appointed shall be final and binding, and judgment of the award may be entered in any court of competent jurisdiction.

(Emphasis in original). First Class initially argued before the circuit court that "the agreement to arbitrate establishes [CAS] as the entity to administer and fully settle . . . any dispute, controversy, interpretation, or claim between the parties." After the Salsmans informed the court that CAS was defunct and no longer provided

12

arbitrations, however, First Class argued that "a simple [G]oogle search of either phrases (1) 'Home Inspection Dispute Arbitration Services, Inc.' or (2) 'Rules and Procedures of the Expedited Arbitration of Home Inspection Dispute arbitration Services, Inc.' results in the very first listings of Construction Dispute Resolution Services, LLC . . . and their website." This parol evidence is inadmissible to vary or contradict the terms of the agreement that First Class concedes are both complete and unambiguous. *See id.* And even if it were admissible, we can find no support for First Class's contention that, absent a specific provision expressing as much, the court's interpretation of a contractual agreement should be bound by a company's deft exploitation of Google search algorithms.

Further, First Class essentially asks that we read the underlined portion of the arbitration clause out of the agreement entirely. Confusingly, First Class's arbitration agreement with CDRS, which was attached as an exhibit to First Class's response to the motion for reconsideration, attempted to have the Salsmans consent to an arbitration that would be "conducted according to the CDRS Home Inspection Arbitration Rules and Procedures." This proposed rule and procedure system directly conflicts with the portion of the agreement between First Class and the Salsmans stating that the arbitration would proceed under the rules and procedures of CAS. We decline to engage in any reading of the parties' contract that invalidates portions of the agreement at the will of First Class. "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function

or sense." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003).

We agree with First Class that the public policy favoring arbitration is extensive. In fact, the Supreme Court of the United States has reiterated that the national policy favoring arbitration "'appli[es] in state as well as federal courts' and 'forecloses state legislative attempts to undercut the enforceability of arbitration agreements.'" *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)). This strong national policy favoring arbitration is demonstrated by Missouri's understanding that any "[d]oubts as to arbitrability should be resolved in favor of coverage." *Dunn Indus.,* 112 S.W.3d at 429. In this case, however, there are no doubts as to arbitrability.[4] The Salsmans agreed to arbitration—*in front of CAS*. Nothing in the Federal Arbitration Act allows First Class to expand the arbitration promise it secured from the Salsmans to mandate the use of an arbitrator chosen after a "simple" Google search. *See A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923, 928 (Mo. banc 2018).

---

[4] In broad terms, First Class asserts that the plain language of their arbitration agreement requires we compel arbitration. At no point during arguments in the circuit court or in the briefs before us, did First Class specifically invoke Section § 435.360, which states:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

Accordingly as discussed in *A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923, 925 n. 2 (Mo. banc 2018), First Class has not preserved for appeal any argument that this statute should act to replace the failed appointment method.

14

As the drafter of the contract, First Class had the ability to draft an agreement that contained an appointment method that would allow them to select CDRS or nearly any arbitrator of their choosing.[5] First Class failed to do so, and we will not provide it the benefit of a bargain that it did not secure itself. Accordingly, Point I is denied.

## CONCLUSION

We affirm the circuit court's denial of the motion to compel arbitration.

_____
**LISA WHITE HARDWICK, JUDGE**

**ALL CONCUR.**

---

[5] "Arbitration agreements that foresee and account for the possible unavailability of an identified arbitrator can easily be imagined and, in fact, are not rare." *Id.* at 928 n.6.